R. Christopher Harshman, Esq. (248214)
charshman@bowenhayes.com
BOWEN HAYES & KREISBERG
10350 Santa Monica Boulevard, Suite 350
Los Angeles, California 90025
Telephone:   (310) 425-3529
Facsimile:   (310) 307-3221

Attorneys for Cold Heaven Cellars, LLC and
Morgan Clendenen

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| Bonvivino Capital, LLC, | Case no. CV12-08185-ODW (FFMx) |
|---|---|
| Plaintiff, | DEFENDANTS' BRIEF REGARDING ILLEGALITY OF ALLEGED PROFIT SHARING CONTRACT |
| vs. | |
| Morgan Clendenen *et al*, | Hon. Otis D. Wright, II |
| Defendants. | |

At the time Scott Manlin ("Manlin"), through his Bonvivino Capital, LLC ("BC") entered into the Red Wine Program ("RWP") – an arrangement Manlin has characterized as a 'partnership' and, in the Complaint ("Compl.") in this action, a joint venture[1] – with Cold Heaven Cellars, LLC ("Cold Heaven"), that agreement was illegal pursuant to federal and state statutes. Neither Manlin, his BC, nor the RWP as envisioned by Manlin, could have operated as profit participants without a federal basic permit and a California state "type 2" ABC license, because the sale, and commercial production, of wine is a privilege, not a right.

## I. MANLIN AND BONVIVINO ARE INSEPARABLE

Manlin has, throughout its participation in the RWP, intertwined BC's affairs with his own, and with the RWP. By BC's own produced documents and calculation of damages, Manlin seeks to: charge his personal Internet charges (in flight and Verizon) against the RWP (PL PG 316-321, 998-1000); have the RWP pay for his parking tickets (*Id.*); cover his personal meals with friends at high-end Chicago eateries such as Alinea, Aviary, and Yusho (*Id.*); and count as RWP expenses the various (non-California) Secretary of State filings for BC (PL PG 888, 1198), BC's CT Corporate Systems costs (PL PG 887, 892), Manlin/BC's accountant fees (PL PG 884, 893); and even seeks to have the RWP pay for shipping Manlin's personal Porsche cross-country (PL PG 873, 1397). Even BC's Complaint treats Manlin and BC interchangeably (alleging, e.g., "the denial of access of Plaintiff [Bonvivino Capital, LLC] to the Winery or its property," Compl. ¶ 9) and in commingled fashion (alleging as wrongful conduct, e.g., "the discharge of Plaintiff's managing member, Scott Manlin, as chief financial operator of CH," *Id.*).

Further, no clairvoyance is needed to see that, but for Manlin's personal relationship (*Id.*, ¶ 17) with Morgan Clendenen ("Clendenen"), the RWP would not have existed. The fiction of BC and Manlin being separate entities with respect to the RWP is just that – a fiction. Likewise, Manlin did *not* at all times, as he now claims, personally participate in the RWP under the auspices of Cold Heaven; he alleges Cold Heaven severed its ties with him

---

[1] Compl. ¶ 13: "[A]n oral agreement regarding the production, development, ownership, marketing, sale and distribution of all red wine made, marketed or produced at the Winery under the Cold Heaven label," wine Manlin has described as "Plaintiff's and the joint venture's assets." (*Id.*, ¶ 9.)

in October 2011 (*Id.*), but was as of at least April 26, 2012 still materially participating in RWP operations and requiring his agreement with decisions concerning RWP (PL PG 476). These are <u>not</u> the actions of a passive investor.

## II. THE RWP AS A SEPARATE ENTITY

Manlin and BC have long held that the RWP was a separate entity, that maintained title to the RWP wines, etc. (PL PG 116-117; 145-147; 377; 435-444 (wherein Manlin discusses "ownership of my capital…") He described it, in the April 2011 email correspondence with one of Cold Heaven's wine industry experts, as: "My LLC (Bonvivino Capital, LLC 'BC') has a 'partnership' with Cold Heaven Cellars, LLC ('CH'). […] We refer to that partnership as 'The Red Wine Program' […] CH handles the production, sales and marketing of the Red Wine (though I am involved), BC pays the direct bills and at the end of the day CH and BC split the profits evenly." (PL PG 1057-1058, the "Barieau Emails.") (In response to that statement by Manlin, Ms. Barieau stated: "If you form a California partnership between Bonvivino Capital and Cold Heaven in which you are both financial participants in the production and sale of wine, you will need an ABC license." (*Id.*))

## III. THE RWP REQUIRED A FEDERAL PERMIT

> "It shall be unlawful, except pursuant to a basic permit issued under this subchapter by the Secretary of the Treasury … (1) to engage in the business of … producing wine, rectifying or blending … wine, … or (2) for any person so engaged to sell, offer or deliver for sale, contract to sell, or ship, in interstate or foreign commerce, directly or indirectly or through an affiliate, … wine so distilled, produced, rectified, blended, or bottled, or warehoused and bottled." 27 U.S.C.A. § 203(b) (West)

This requirement is as true for "joint venture" entities as it is for corporations, general partnerships, etc.:

> "Whether it be considered a partnership … or a joint adventure, as plaintiff characterizes it, the nature of the business in which it was engaged, namely, the wholesale liquor business, necessitated the obtaining of a basic permit from the federal government and a license from the state. By failing to acquire this permit and license, it engaged in business illegally." *Minter Bros. Co. v. Hochman*, 231 Minn. 156, 161 (1950) (Discussing an arrangement where: "Plaintiff possessed the requisite state and federal licenses and permits to engage in the wholesale liquor

business for itself [but] [a]s a joint business enterprise, plaintiff and defendants did not possess such licenses or permits." *Id.* at 159.)

Federal statutes require the identification of all "owner[s], all general parties, LLC members/managers, corporate officers and directors, and shareholders with more than 10% voting stock." See, e.g., 27 U.S.C.A. § 204; TTB forms 5000.9 (http://www.ttb.gov/forms/f50009.pdf) and Application for Basic Permit under the Federal Alcohol Administration Act, 5100.24 (http://www.ttb.gov/forms/f510024.pdf). A stated purpose of federal alcoholic beverage law is to "to exclude from the industries persons who would be likely to violate the provisions of the bill and other Federal or state laws." *White v. United States*, 355 F.2d 58, 63 (8th Cir. 1966) (quotation omitted). "Inherent in the accomplishment of these ends obviously would be the necessity of having disclosure made of the identity of those who wanted to go into or take over such a business." (*Id.*)

The Code of Federal Regulations continues this reasoning; 27 C.F.R. § 24.101 requires that a "person desiring to conduct operations involving untaxpaid wine, including the use of spirits in wine production, shall file an application and bond as provided in § 24.105." Under 27 C.F.R. §§ 24.105-106, anyone who wishes to establish a winery or sell wine wholesale must file an application to Establish and Operate Wine Premises: "Any person intending to engage in the business of producing or blending wine or purchasing wine for resale at wholesale is required under the Federal Alcohol Administration Act, as amended (49 Stat. 978; 27 U.S.C. § 203) to obtain a basic permit." (27 C.F.R. § 24.106.) Only when the TTB approves the Application is the Applicant authorized to operate: "Operations requiring a basic permit may not be conducted until the basic permit application is approved." (*Id.*)

The RWP entity (in any form) was not licensed. BC is not a licensed entity. Manlin is not a licensed person. As such, there is simply no way that Manlin or his BC could participate in profits made from the sale of alcohol, without having been pre-authorized by the TTB as a result of a filed and approved amended Application from Cold Heaven, under 27 C.F.R. §§ 24.109, 24.110, and 24.120 – which would have had to include disclosure of

BC's "other interest" or an new Application from BC or Manlin, neither of which exist. Even adding Manlin or his BC to Cold Heaven as a member would have required an (amended) application (76 C.F.R. §§ 24.120, 24.125) to, and the approval of, the TTB, allowing Cold Heaven to operate with BC as an interest holder under 27 C.F.R. § 24.106; prior to such approval, BC could <u>not</u> have had an interest in Cold Heaven (27 C.F.R. 24.101 *et seq*).

## IV. THE RWP REQUIRED A CALIFORNIA ABC LICENSE

"The Department of Alcoholic Beverage Control ["ABC"] shall have the exclusive power … to license the manufacture, importation and sale of alcoholic beverages in this State. … It shall be unlawful for any person other than a licensee of said department to manufacture, import or sell alcoholic beverages in this State." California State Constitution, Art. XX, Sec. 22.

> "This division is an exercise of the police powers of the State for the protection of the safety, welfare, health, peace, and morals of the people of the State, to eliminate the evils of unlicensed and unlawful manufacture, selling, and disposing of alcoholic beverages, and to promote temperance in the use and consumption of alcoholic beverages…[T]he subject matter of this division involves in the highest degree the economic, social, and moral well-being and the safety of the State and of all its people. All provisions of this division shall be liberally construed for the accomplishment of these purposes." Cal. Bus. & Prof. Code § 23001.

"There is in this state as a result of the constitutional provisions, Legislative enactment and administrative rules and regulations, a complete and comprehensive set of laws which cover the liquor industry. It is generally agreed that the liquor industry is one which greatly affects the public health, safety, welfare and morals of the people, … that those in the industry must operate subject to strict control of constitutional authorities. … Each applicant for a license must provide the department with certain information with reference to the applicant's background, crime record, status and other data (Sections 23950–23958), and must subject himself and the premises where the business will be conducted to a thorough investigation." *Duke Molner Wholesale Liquor Co. v. Martin*, 180 Cal. App. 2d 873, 880-81 (Cal. Ct. App. 1960) (internal citations omitted).

The ABC recently noted the general rule: "[P]rofiting from the sale of alcoholic beverages [is a] fundamental privilege[] of a licensee ... if non-licensees share in the profits from the sale of alcoholic beverages, violations of Business and Professions Code sections 23300 and 23355 may occur." (California Department of Alcoholic Beverage Control June 2009 Industry Advisory, *available at* http://www.abc.ca.gov/trade/Advisory-Third%20Party.pdf )

Neither Manlin nor BC was or is a licensee. Neither Manlin nor BC acquired an interest in Cold Heaven (and even if either had, such an interest would have been subject to ABC investigation and approval: Cal. Bus. & Prof. Code §§ 24071.1, 23405.2, and 23405.3.) "Each license shall be issued to a specific person." *Id.* § 24040. The definition of "person" includes limited liability companies and joint ventures. *Id.*, § 23008. The RWP was not separately licensed. Only Cold Heaven itself was, and so only Cold Heaven produce and sell the RWP wine. Neither Scott Manlin nor his Bonvivino, nor the RWP, were licensed and therefore each was unable to exercise the fundamental privileges of an ABC licensee.

## V. ILLEGAL CONTRACT

"It is essential to the existence of a contract that there should be … [a] lawful object." 1 Witkin Sum. Cal. Law Contracts § 3. "That is not lawful which is [c]ontrary to the policy of express law, though not expressly prohibited; or, [o]therwise contrary to good morals." Cal. Civil Code, § 1667(2)-(3). "No principle of law is better settled than that a party to an illegal contract cannot come into a court of law and ask to have his illegal objects carried out." *Yoo v. Jho*, 147 Cal. App. 4th 1249, 1251 (Cal. Ct. App. 2007) (quoting *Wong v. Tenneco, Inc.*, 39 Cal. 3d 126, 135 (1985)), *and see, e.g., Brenner v. Haley*, 185 Cal. App. 2d 183, 187 (Cal. Ct. App. 1960) ("a party to an illegal contract cannot set up a claim with an illegal contract as its basis").

Respectfully submitted,

BOWEN HAYES & KREISBERG

Date: October 2, 2014          By: /s/ R. Christopher Harshman
                                   R. Christopher Harshman, Esq.